IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>TRACY INMAN,<br><br>      Defendant. | 8:21-CR-60<br><br>MEMORANDUM AND ORDER |

## I. INTRODUCTION

This matter is before the Court on defendant Tracy Inman's Motion to Vacate under 28 U.S.C. § 2255. Filing 94. In her Motion, Inman raises four grounds for habeas relief, all involving alleged ineffective assistance of counsel: (1) failure to file a notice of appeal; (2) failure to challenge the purity and quantity of methamphetamine attributed to her; (3) failure to ensure she understood her plea agreement; and (4) failure to move for a departure based on "mental health" and "diminished capacity." Filing 94 at 3–8. Having reviewed Inman's Motion, the Court denies every ground except for Inman's allegation that her attorney failed to file an appeal at her request. On that remaining issue, the Court will direct the United States to file a response within 14 days of the date of this order. The Court will determine whether to hold a hearing on this ground after the Government files its response.

## II. BACKGROUND

On September 12, 2020, officers with the Omaha Police Department stopped a vehicle driven by Inman for lack of plates or visible in-transits.[1] Filing 92 at 5. While officers drafted a citation, a K-9 unit arrived with a drug dog. Filing 92 at 5. After being deployed, the drug dog

---

[1] The Court draws part of this background section from Inman's presentence investigation report, which the Court adopted without change at sentencing.

1

gave a positive alert for narcotics in the vehicle. Filing 92 at 5. Officers then searched the vehicle, discovering small baggies with methamphetamine residue, a tin with 3.1 grams of methamphetamine, and a backpack with 72.172 grams of methamphetamine and a digital scale. Filing 92 at 5. A search of Inman's person uncovered 49.684 grams of methamphetamine. Filing 92 at 5. Laboratory testing confirmed that the methamphetamine discovered had a 95% purity. Filing 92 at 5. During a post-*Miranda* interview, Inman admitted to selling methamphetamine for a couple of months. Filing 92 at 5.

Based on these facts, a grand jury indicted Inman in a one-count Indictment for possessing with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1), (b)(1). Filing 1 at 1. Tracy appeared before a magistrate judge to plead guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(B) plea agreement. Filing 69 (Text Minute Entry). During the change-of-plea hearing, Inman stated that she understood the plea agreement after the Government read the terms of the agreement to her in court. Filing 76 at 16. Inman's counsel explained that he went to Inman's place of employment and read the plea agreement to her, and when Inman had questions, he answered them to her satisfaction. Filing 76 at 16–17. The magistrate judge asked Inman if this was correct, and Inman said, "Yes." Filing 76 at 16. When the magistrate judge asked if Inman understood the agreement and if her attorney answered her questions to her satisfaction, Inman answered "yes" to both questions. Filing 76 at 18. Inman also testified that she had no complaints or objections to her counsel's representation. Filing 76 at 19.

Inman's PSR noted that Inman made admissions during her post-*Miranda* interview about the amounts of methamphetamine she sold before her arrest. Filing 92 at 6. The report treated the weight of methamphetamine involved in her past sales as methamphetamine mixture, combined it with the methamphetamine actual discovered during Inman's arrest, and calculated the drug weight

attributable to Inman as 2,948.3 kilograms of converted drug weight. Filing 92 at 6. This resulted in the same base offense level, 30, as would result had only the actual methamphetamine been attributed to Inman. Filing 92 at 6.

The Court held a sentencing hearing on April 20, 2023. Filing 89 (Text Minute Entry). Prior to the hearing, Inman's counsel filed objections to the PSR, a motion for a downward departure, and a motion for a downward variance. Filing 80; Filing 84; Filing 85. The objections and motions urged the Court to consider all the methamphetamine attributed to Inman as methamphetamine mixture based on a policy disagreement with the guidelines; argued her criminal history category substantially overrepresented her criminal history; and contended that Inman's conduct on release and her mental, physical, and emotional characteristics supported a downward variance. Filing 80; Filing 84; Filing 85. At the hearing, the Court overruled Inman's objections and denied her motions. Filing 89 (Text Minute Entry). The Court explained that it did not have a policy disagreement with the guidelines' treatment of methamphetamine actual versus methamphetamine mixture, that Inman's criminal history category was not substantially overrepresented, and that a downward variance was unwarranted. The Court then sentenced Inman to 150 months of incarceration, which was within the guidelines range. Filing 90. On June 8, 2023, Inman filed her Motion to Vacate under 28 U.S.C. § 2255. Filing 94.

### III. ANALYSIS

#### A. Applicable Standard

Inman brings her Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

3

"Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, No. 21-857, 2023 WL 4110233, at *5 (U.S. June 22, 2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) "Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011))). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

The judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the United States to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rule 4(b) of the Rules Governing Section 2255 Proceedings. A court cannot accept a petitioner's allegations as true if "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

**B.  Motion to Vacate**

In her Motion to Vacate, Inman raises four grounds for habeas relief, all involving alleged ineffective assistance of counsel: (1) failure to file a notice of appeal; (2) failure to challenge the purity and quantity of methamphetamine attributed to her; (3) failure to ensure she understood her plea agreement; and (4) failure to move for a departure based on "mental health" and "diminished capacity." Filing 94 at 3–8. The Motion is timely, as Inman filed it within a year of entry of judgment. *See* 28 U.S.C. § 2255(f)(1). Inman may assert ineffective assistance of counsel

4

arguments for the first time in a habeas proceeding. *See Massaro v. United States*, 538 U.S. 500, 509 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). The Court addresses each ground in turn.

    1. *Failure to File a Notice of Appeal*

In Ground One of her Motion to Vacate, Inman alleges that her counsel "failed to file a notice of appeal when one was requested after sentencing." Filing 94 at 4. According to Inman, her attorney told her she "had nothing left to appeal." Filing 94 at 4.

A criminal defendant's Sixth Amendment right to counsel is violated when defense counsel fails to provide effective assistance. *See Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "To prove ineffective assistance of counsel, [Inman] must show (1) [her] attorney's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for that deficient performance, the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 688). If a habeas petitioner establishes that her counsel failed to file a timely appeal despite a request to do so, both the performance prong and the prejudice prong are satisfied. *See Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000).

To obtain relief in the failure-to-appeal context, a petitioner "must show that [she] manifestly 'instructed [her] counsel to file an appeal.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Barger*, 204 F.3d at 1182). "A bare assertion by the petitioner that [she] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id.* (quoting *Barger*, 204 F.3d at 1182).

5

Here, Inman alleges that she asked her counsel to appeal after sentencing, but her counsel declined to do so because, in his view, there was nothing to appeal. Presently, the Court does not have evidence in the record showing that this assertion is false. Because it does not "plainly appear" that Inman is not entitled to relief under Ground One of her Motion, the Court will direct the Government to respond to the failure-to-file-an-appeal issue. *See* 28 U.S.C. § 2255(b).

2. *Failure to Challenge Purity and Quantity of Methamphetamine*

In Ground Two, Inman alleges that her counsel "failed to challenge the purity and quantity of the methamphetamine attributed to [her]." Filing 94 at 5. Inman does not provide any details as to how her attorney should have made such a challenge, nor indicate how such a challenge would have been successful.

In her petition to enter a plea of guilty, Inman admitted that she possessed with intent to distribute over 50 grams of methamphetamine. Filing 74 at 7. Similarly, the factual basis of Inman's plea agreement stated that Inman possessed 109.67 grams of methamphetamine actual. Filing 75 at 2. At Inman's change-of-plea hearing, the Government outlined in the factual basis for the offense that Inman possessed 109.67 grams of methamphetamine actual. Filing 76 at 24–25. When asked by the magistrate judge if the Government could prove that amount beyond a reasonable doubt, Inman stated, "Yes." Filing 76 at 25–26.

Inman's PSR, which the Court adopted without change at sentencing, stated that law enforcement lab-tested the methamphetamine found in the backpack of the vehicle Inman was driving and discovered on Inman's person. Filing 92 at 6. Testing revealed a total of 121.9 grams of 95% pure methamphetamine. Filing 92 at 6. Law enforcement did not test the 6.8 grams of methamphetamine found in three separate baggies in the vehicle, and the PSR did not include these amounts in the drug weight attributed to Inman. Filing 92 at 6. The PSR also outlined that Inman

6

admitted in a post-*Miranda* interview to selling and receiving additional amounts of methamphetamine. Filing 92 at 6. To account for Inman's prior sales and receipt of methamphetamine, the PSR attributed an additional 255.15 grams of methamphetamine mixture to her. Filing 92 at 6. After combining the methamphetamine actual and methamphetamine mixture, the PSR concluded that Inman was responsible for 2,438 kilograms of converted drug weight, leading to a base offense level of 30. Filing 92 at 6. The PSR further noted that the base offense level would have been the same had the methamphetamine mixture amounts not been included in the converted drug weight calculation. Filing 92 at 6; *see also* U.S.S.G. § 2D1.1(a)(5), (c)(5) (providing a base offense level of 30 for a defendant possessing 1,000 kilograms but less than 3,000 kilograms of drug weight).

At sentencing, the Government must prove the drug type and quantity attributable to the defendant by a preponderance of the evidence. *See United States v. McArthur*, 11 F.4th 655, 659 (8th Cir. 2021) (quantity); *Morelos v. United States*, 709 F.3d 1246, 1251 (8th Cir. 2013) (type). Laboratory testing of seized drugs is by far the most common way of establishing the amount and type of narcotics possessed by a defendant. *See, e.g., United States v. Madison*, 863 F.3d 1001, 1006 (8th Cir. 2017) ("The government may prove the total quantity of actual methamphetamine in a series of transactions by testing the purity of a seized quantity and applying the percentage of actual methamphetamine in the tested quantity to the unrecovered quantities." (quoting *United States v. Houston*, 338 F.3d 876, 879 (8th Cir. 2003))). Additionally, when a defendant stipulates in her plea agreement to the type and quantity of drugs she possessed, she cannot challenge the application of the guidelines to that stipulation. *See United States v. Kugmeh*, 932 F.3d 1195, 1197 (8th Cir. 2019) ("A defendant may not challenge an application of the Guidelines to which he agreed in a plea agreement (unless he proves the agreement invalid or succeeds in withdrawing

from it)." (quoting *United States v. Barrett*, 173 F.3d 682, 684 (8th Cir. 1999))); *Barrett*, 173 F.3d at 684 (holding that the defendant's objection to the court's drug quantity finding failed when the defendant stipulated to the amount of drugs involved in the criminal conspiracy).

The Court concludes that it "plainly appears" that Inman's counsel acted reasonably by not objecting to the purity and quantity of methamphetamine attributable to Inman and, even if this was unreasonable, Inman cannot establish prejudice from his decision. So long as Inman possessed between 50 grams and 149 grams of methamphetamine actual, her base offense level was 30. *See* U.S.S.G. § 2D1.1(a)(5), (c)(5). Inman pleaded guilty to possession with intent to distribute 50 grams or more of methamphetamine actual. She admitted in her plea petition to possessing over 50 grams of methamphetamine. In her plea agreement, she stipulated that she possessed with intent to distribute 109.67 grams of methamphetamine actual. When questioned about the factual basis of her offense during the change-of-plea hearing, Inman agreed that the Government could prove she possessed 109.67 grams of pure methamphetamine. *See Thompson v. United States*, 872 F.3d 560, 566 (8th Cir. 2017) ("[A] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." (alteration in original) (quoting *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997))). Furthermore, Inman's PSR stated that laboratory testing confirmed the drugs Inman possessed at the time of the traffic stop were 121.9 grams of 95% pure methamphetamine. Inman provides no basis by which her attorney could have called the laboratory testing into question.

At sentencing, Inman's counsel's strategy was to request that the Court treat the methamphetamine actual in her possession as methamphetamine mixture for guidelines purposes, as a different judge in this district recently did. He also argued that the Court should depart downward pursuant to § 4A.13(b)(1) of the sentencing guidelines because Inman's criminal history

8

category substantially overrepresented her criminal history. In addition, he moved for a downward variance based on Inman's conduct on release and her struggles with mental health and drug abuse. Inman does not give the Court any reason to believe that this strategy was unreasonable. *See Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) ("[Courts] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" (second alteration in original) (quoting *Strickland*, 466 U.S. at 689)). In light of the offense to which she pleaded guilty, the stipulations in her plea agreement, and her admissions prior to sentencing, any challenge to the amount and purity of the methamphetamine Inman possessed would have been frivolous. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance."); *United States v. Waits*, No. 4:14-CR-00250-06-JM, 2022 WL 16715845, at *2 (E.D. Ark. Nov. 4, 2022) ("A lawyer's failure to raise frivolous arguments does not support an ineffective assistance claim."); *cf. Jackson v. United States*, 956 F.3d 1001, 1008 (8th Cir. 2020) ("It is not ineffective assistance of counsel to withdraw objections that have no support in the law." (quoting *Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009))). Inman's counsel was not ineffective for arguing for a more lenient sentence on several bases and not making a frivolous motion challenging the drug purity and quantity. *Cf. United States v. McClain*, 149 F. App'x 549, 551 (8th Cir. 2005) (concluding that defense counsel "made an objectively reasonable decision to not risk losing a two-level reduction for acceptance of responsibility by disputing previous attestations").

Even if Inman's counsel was ineffective for failing to object to the quantity and purity of the methamphetamine attributed to Inman, she cannot establish prejudice. To establish prejudice, Inman must show a "reasonable probability" that the result of the proceeding would have been different absent her counsel's alleged errors. *See Love*, 949 F.3d at 409. "'A reasonable probability

is a probability sufficient to undermine confidence in the outcome' or 'a substantial, not just conceivable, likelihood of a different result.'" *Meza-Lopez,* 929 F.3d at 1044–45 (quoting *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014)). When it comes to alleged deficiencies in counsel's performance at sentencing, the petitioner "must demonstrate a reasonable probability that [her] sentence would have been different . . . ." *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013).

To begin, the fact that any argument against the drug quantity and purity attributable to Inman would have been frivolous means that Inman suffered no prejudice from her attorney's failure to raise it. Additionally, as previously noted, Inman's base offense level was 30 by virtue of pleading guilty to possession with intent to distribute 50 grams or more of methamphetamine actual. Her base offense level, and therefore her guideline range for incarceration, could not be lowered by an attack on the drug quantity and purity. Additionally, when denying Inman's motion for a downward variance at sentencing and pronouncing sentence, the Court focused on Inman's criminal history, Inman's admission that she had been selling methamphetamine for a couple of months, and the fact that Inman committed the offense while serving a prior criminal justice sentence. The quantity and purity of methamphetamine possessed by Inman was not mentioned. Under these circumstances, there is no reasonable probability that Inman's sentence would have been different had her counsel objected to the amount and purity of the drugs Inman possessed. Because it "plainly appears" that Inman is not entitled to relief on this ground, the Court denies Ground Two of Inman's Motion.

3. *Failure to Ensure Inman Understood the Plea Agreement*

In Ground Three, Inman contends that her counsel "failed to communicate with [her] about understanding the plea agreement." Filing 94 at 7. Inman claims that "[s]he was unaware of what

10

the legal words meant [in] the agreement" and that her counsel told her she "had" to sign the agreement. Filing 94 at 7. According to Inman, she did not "knowing[ly]" and "voluntarily" sign her plea agreement. Filing 94 at 7.

A criminal defendant may attack the knowing and voluntary nature of her plea in a collateral proceeding by arguing that her counsel rendered ineffective assistance. *See McMann v. Richardson*, 397 U.S. 759, 770–71 (1970) ("Whether a plea of guilty is unintelligent . . . depends . . . on whether the advice [of counsel] was within the range of competence demanded of attorneys in criminal cases."); *Walker*, 810 F.3d at 577–78 (evaluating whether advice on sentencing issues by counsel made plea involuntary). When advising defendants on whether to plead guilty, counsel must provide "reasonably informed advice on material issues." *Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020). To establish prejudice, the petitioner must show a reasonable probability that, but for her counsel's incorrect advice, she would not have pleaded guilty and instead would have proceeded to trial. *See Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014).

The Eighth Circuit recognizes that statements made by a defendant when entering a guilty plea "pose a formidable barrier" to after-the-fact assertions that the defendant did not understand the plea agreement or the potential consequences of pleading guilty. *Thompson*, 872 F.3d at 566; *see also Walker*, 810 F.3d at 578 (holding that representations made by the defendant in his written plea agreement and his plea testimony rebutted the defendant's claim that he was not adequately advised about sentencing issues). Inman's statements during her change-of-plea hearing undermine her claim that her counsel did not adequately advise her about her plea agreement and pleading guilty. At the hearing, the Government read the terms of the agreement to Inman and Inman stated that she understood the agreement. Filing 76 at 15–16. When the magistrate judge asked how Inman's counsel went over the plea agreement with her, Inman agreed with her counsel

11

that they reviewed it at her at her place of employment and that he answered her questions to her satisfaction. Filing 76 at 16–17. The magistrate judge also inquired if Inman understood the plea agreement before signing it, and Inman said, "Yes." Filing 76 at 18. Inman further testified that she had no complaints or objections with her counsel's representation; that she was freely and voluntarily pleading guilty; and that no one used any force against her to make her plead guilty.[2] Filing 76 at 19, 23–24. Based on Inman's statements at her change-of-plea hearing, her attorney provided proper advice and ensured she understood her plea agreement. Inman's allegations to the contrary are contradicted by the record. *See Walker*, 810 F.3d at 580 (stating that allegations in a habeas petition "cannot be accepted as true" when "they are contradicted by the record"). Inman's counsel rendered effective assistance with respect to Inman entering a plea agreement.[3]

Yet, even assuming that Inman's counsel did not properly advise Inman about her plea agreement, Inman fails to explain how she was prejudiced. Inman provides no clarification on what she did not understand about her plea agreement that caused her to forego her right to trial. *See Covington*, 739 F.3d at 1090 (stating that the defendant must show she would have gone to trial to establish prejudice). Nothing in Inman's Motion or the record shows Inman had any interest in going to trial. Inman vaguely alleging that she did not understand what "the legal words" in her agreement meant does not provide a basis to believe that, had she understood them, she would not have pleaded guilty. It "plainly appears" that Inman is not entitled to relief on Ground Three of her Motion. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings.

---

[2] Inman made similar representations in her petition to enter a plea of guilty. Filing 74.
[3] Inman's allegation that her counsel told her she "had" to sign the plea agreement does not show ineffectiveness. To enter into an agreement with the Government, Inman did have to sign the plea agreement. To the extent Inman is claiming that her counsel somehow forced her to sign the plea agreement, that claim is rebutted by her testimony during the change-of-plea hearing. At the hearing, Inman agreed with her counsel's statements as to how they reviewed the plea agreement, stated that he answered all her questions satisfactorily, and testified that no one was forcing her to plead guilty.

4. *Failure to Move for Departure Based on "Mental Health" and "Diminished Capacity*

Inman's final ground for habeas relief is that her counsel was ineffective for failing to move for a departure "due to 'mental health' and 'diminished capacity.'" Filing 94 at 8. Inman does not elaborate further on what "mental health" and "diminished capacity" issues she wishes her counsel would have asserted at sentencing.

Inman's PSR outlined her mental health problems, for which she was taking medication. Filing 92 at 20–21. The PSR also documented Inman's struggles with substance abuse, particularly, methamphetamine. Filing 92 at 22. In a presentence motion, Inman's counsel noted Inman's drug dependence issues and her diagnosed mental, physical, and emotional conditions. Filing 84 at 2. The motion also touted Inman's completion of intensive inpatient substance abuse treatment and engagement in mental health therapy. Filing 84 at 3–4. Inman's counsel reiterated Inman's mental, physical, and emotional health issues at sentencing during allocution and while arguing for a downward variance.

The Court presumes Inman's reference to departures based on "mental health" and "diminished capacity" refers to the departure provisions in sections 5K2.13 and 5H1.3 of the United States Sentencing Guidelines Manuel. Under § 5K2.13, a court may depart downward if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. The application note to this section defines "significantly reduced mental capacity" as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 application note 1. The section prohibits departing downward, however, if the significantly reduced mental capacity "was

13

caused by the voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13. Section 5H1.3 states that "mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions . . . are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3.

Although Inman is correct that her counsel did not move for a departure under these provisions of the sentencing guidelines, her attorney declining to do so does not mean he acted unreasonably. Instead of moving for a departure, Inman's counsel chose to assert her mental health and substance abuse struggles in support of a motion for a variance from the guidelines. Although unsuccessful, this strategy was sound. *See United States v. Twine*, 66 F.4th 736, 738 (8th Cir. 2023) (noting the "mitigating impact of [the defendant's] serious, untreated mental health issues"); *United States v. Hubbs*, 18 F.4th 570, 572 (8th Cir. 2021) (describing mental health and drug use issues as "mitigating factors" that the defendant used to support a motion for a variance). Indeed, there are good reasons to move for a variance based on mental health and substance abuse issues rather than asserting those issues in support of a departure. For one, the departure provisions upon which Inman relies are limited. "Diminished capacity" under § 5K2.13 must be a "significant" impairment of the defendant's ability to either appreciate the wrongfulness of the criminal conduct or to control his or her behavior. U.S.S.G. § 5K2.13. Voluntary drug use cannot be considered under this section. *See id.* "Mental and emotional conditions" under § 5H1.3 must be "present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. In the context of a request for a variance, however, mental health and drug abuse issues are mitigating factors in and of themselves, which the court takes into consideration when weighing the factors outlined in 18 U.S.C. § 3553(a). Thus, the odds of success are greater in a variance motion based on mental health and substance abuse issues rather than in a departure

14

motion. Additionally, appellate review of downward departure rulings is far narrower than the review of variance rulings. So long as a district court recognizes that it has the discretion to depart downward, declining to do so is unreviewable on appeal. *See United States v. Wanna*, 744 F.3d 584, 589 (8th Cir. 2014). Downward variance rulings, however, are reviewable under a "deferential abuse-of-discretion standard" for the sentence's "reasonableness." *United States v. Angeles-Moctezuma*, 927 F.3d 1033, 1037 (8th Cir. 2019). In sum, Inman's counsel's choice to raise her struggles with mental health and drug abuse via a variance motion, rather than a departure motion, was a reasonable strategy.

Furthermore, Inman cannot establish a reasonable probability that she would have received a shorter sentence had her counsel made a departure motion under sections 5H1.3 and 5K2.13. *See Jeffries*, 721 F.3d at 1014 (stating that to prejudice requires showing a reasonable probability that the sentence would have been different). Inman's counsel used her mental health and substance abuse issues as reasons to vary downward. In denying Inman's motion for a downward variance, the Court discussed Inman's admission that she had been selling methamphetamine for a couple of months, her lengthy criminal history that included drug offenses, and the fact that Inman committed her offense while serving a prior criminal justice system. The Court acknowledged that Inman had done well in addressing her addiction to methamphetamine while on release but stated that Inman's criminal history and her inability to stay out of trouble militated against a below-guidelines sentence. Given the Court's comments and the reasons underlying its sentence, there is no basis to find a reasonable probability that the Court would have exercised its discretion to depart downward based on "mental health" and "diminished capacity" when the Court declined to vary on those grounds. Because Inman cannot establish ineffectiveness or prejudice, it "plainly appears" that she is not entitled to relief under Ground Four of her Motion.

## IV. CONCLUSION

The Court concludes that Inman is not entitled to relief on Grounds Two, Three, and Four of her Motion to Vacate under 28 U.S.C. § 2255. The Court further finds that, based on the current record, it does not "plainly appear" that Inman is not entitled to relief on Ground One, which asserts her counsel failed to file a timely appeal at her request. Accordingly,

IT IS ORDERED:

1. Tracy Inman's Motion to Vacate under 28 U.S.C. § 2255, Filing 94, is denied in part;

2. The Court orders the Government to respond to Ground One of the Motion to Vacate within 14 days of the date of this order;

3. The Court will determine whether a hearing is required on Ground One of the Motion to Vacate after receiving the Government's response.

Dated this 27th day of June, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge